**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Phillip C. Shaw, Respondent,

v.

Jeffrey C. Moss, Ed. D., Appellant.

Appellate Case No. 2015-000407

———————————

Appeal From Beaufort County
Marvin H. Dukes, III, Circuit Court Judge

———————————

Unpublished Opinion No. 2016-UP-286
Heard May 20, 2016 – Filed June 15, 2016

———————————

**REVERSED**

———————————

Allen D. Smith, Kenneth L. Childs, Vernie L. Williams, and Shirley M. Fawley, of Childs & Halligan, PA, of Columbia, for Appellant.

Clifford Bush, III, of The Law Offices of Clifford Bush III, LLC, of Beaufort, for Respondent.

———————————

**PER CURIAM:** In this employment action, Dr. Jeffrey Moss, the Superintendent of the Beaufort County School District (the District), appeals the circuit court's reversal of the Beaufort County School District Board of Education's (the Board's) decision to terminate the employment of former H.E. McCracken Middle School

(McCracken) principal, Phillip Shaw.  On appeal, Dr. Moss argues the circuit court erred by (1) improperly applying the substantial evidence standard of review, (2) disregarding the substantial evidence in the record, (3) reversing the Board's decision regarding Shaw's termination, (4) issuing an order containing erroneous facts and conclusions, and (5) failing to grant Dr. Moss's motion for reconsideration.  We reverse.

We find substantial evidence supported the Board's decision to terminate Shaw's employment under section 59-25-430 of the South Carolina Code (2004)[1] on the ground that he willfully violated the District's financial policies.[2]  *See Barrett v. Charleston Cty. Sch. Dist.*, 348 S.C. 426, 431, 559 S.E.2d 365, 368 (Ct. App. 2001) ("[T]he proper standard of review regarding the propriety of a teacher's termination . . . is the substantial evidence test."); *id*. at 432, 559 S.E.2d at 368

---

[1] Section 59-25-430 provides,

> Any teacher may be dismissed at any time who shall fail, or who may be incompetent, to give instruction in accordance with the directions of the superintendent, or who shall otherwise manifest an evident unfitness for teaching; *provided,* however, that notice and an opportunity shall be afforded for a hearing prior to any dismissal.  Evident unfitness for teaching is manifested by conduct such as, but not limited to, the following: persistent neglect of duty, willful violation of rules and regulations of district board of trustees, drunkenness, conviction of a violation of the law of this State or the United States, gross immorality, dishonesty, illegal use, sale or possession of drugs or narcotics.

[2]  Dr. Moss recommended the Board terminate Shaw's employment on numerous grounds, including ten violations of the District's financial policies.  The Board held Shaw manifested an evident unfitness for teaching based on his (1) willful violation of the Board's rules regarding the handling of finances; (2) violation of the confidentiality of employment-related information; and (3) questionable behavior or dishonesty related to his administrative and medical leave, confidentiality, and storage of undeposited student funds in a lockbox under his desk.

("Therefore, this [c]ourt is limited to examining the record to determine whether substantial evidence existed to support the [s]chool [b]oard's decision to terminate [the teacher] . . . ."); S.C. Code Ann. § 59-1-130 (2004) ("'Teacher' means any person who is employed either full-time or part-time by any school district either to teach or to supervise teaching." (emphasis omitted)). Dr. Moss asserted Shaw committed ten violations of the District's financial policies. Although we acknowledge the Board needed only one ground to terminate Shaw's employment, we address several of Shaw's financial violations herein.

First, Dr. Moss recommended the Board terminate Shaw because cash receipts were being accepted and not receipted through the school bookkeeper in violation of District policy. Section I.B.8.3 of the District's Student Activities Policy and Procedure Manual (the Manual) provides, "A receipt should be written for all money deposited, whether collected in the school or received by mail." In addition, Section I.B.3 of the Manual provides, "Middle and High school teachers are not permitted to collect monies from students. All Middle/High school students must be receipted by the school bookkeeper." The District's chief administrative and human resources officer testified McCracken's bookkeeper reported that the student council had held many fundraisers at the school and raised large amounts of money but none of that money had been funneled through the school bookkeeper as required by District policy. There was testimony that the two teachers who sponsored the student council were not following the District's policies regarding the proceeds of fundraisers. According to the chief administrative and human resources officer, both of the sponsors reported that Shaw had instructed them to collect the money raised by the student council and take it to his secretary. One of the sponsors stated Shaw told her to give the funds to his secretary—instead of the school's bookkeeper—so the secretary could deposit the funds into the Parent-Teacher Organization's bank account. The sponsor also stated she never received receipts when she gave money to Shaw's secretary. The District's chief operational services officer testified her staff provided financial training to principals at a summer leadership retreat and at monthly leadership meetings and gave each principal a binder containing the District's policies and procedures. In addition, the bookkeeper stated she notified Shaw several times that money was being collected by the student council but was not being brought to her for depositing, as required by the District's financial policies. Based on the foregoing, we find there was substantial evidence that, upon Shaw's orders, cash was accepted and not receipted through the school bookkeeper, and that Shaw willfully violated the District's financial policies.

Dr. Moss also recommended the Board terminate Shaw because reimbursements for expenses were made from undeposited cash receipts in violation of District policy. *See* Manual, Section I.B.6 ("Under no circumstances should purchases be made or invoices paid from undeposited cash receipts."); *id*. at Section I.C ("No purchases should be made or invoices paid from undeposited cash on hand."). The District's chief operational services officer testified one of the student council sponsors said she routinely took envelopes full of cash—that was student money and school money—to Shaw's secretary, who placed the cash in a filing cabinet in Shaw's office. The sponsor testified that on one occasion when she gave money to Shaw's secretary, Shaw's secretary opened the bottom drawer of the filing cabinet in Shaw's office and she saw several envelopes of cash from "weeks prior" still sitting in the drawer. The sponsor testified she asked Shaw's secretary why the money had not yet been deposited in the bank and Shaw's secretary responded, "I don't have time to go to the bank every time you give me money." The sponsor explained that when a teacher requested funds from her for a school activity, she would ask Shaw for approval and Shaw's secretary would give her an envelope containing cash to give to the teacher. We find this constitutes substantial evidence that reimbursements were made with undeposited cash receipts in violation of the District's policies.

In addition, Dr. Moss recommended the Board terminate Shaw because cash in excess of $600 was kept in Shaw's office at the school overnight in violation of the District's policy that "[u]nder no circumstances shall funds totaling over $25 be left in the school overnight." There was testimony that the chief administrative and human resources officer and the acting superintendent found a lockbox under Shaw's desk that contained Shaw's personal financial statements, personnel files, and more than $600 in cash. Dr. Moss testified the fact that "an H.E. McCracken school sheet" was "in the money" in the lockbox led him to believe the money was student money. In addition, as stated previously, one of the student council sponsors observed that several envelopes of student council money received from sales to students were left in the filing cabinet in Shaw's office for weeks without being deposited in the bank. Therefore, we find there was substantial evidence that Shaw kept more than $25 in cash received from students in his office overnight in violation of the District's policies.

Dr. Moss also recommended terminating Shaw because reimbursements were made without documentation and authorization in violation of District policy. *See* Manual, Section I.C.4 ("All disbursements must be supported by documents that indicate what was purchased. If for any reason an independent, outside document (such as a vendor invoice) is not available, a 'School Voucher' form should be

completed to support the disbursement. . . . School vouchers must be signed and approved by the principal before the disbursement is made."). The District's chief operational services officer testified reimbursements were made without any authorization from Shaw or any supporting documentation other than a receipt. She explained that in a school environment, Shaw would have known about the lack of authorization because he would have seen purchases being made that he had not authorized. We find this constitutes substantial evidence that reimbursements were made without the proper authorization and documentation required by Section I.C.4.

Dr. Moss also recommended terminating Shaw because disbursements were made outside of the Concentration Account and Imprest Account in violation of Section I.C. of the Manual. *See* Manual, Section I.C ("All disbursements should be made from the Concentration Account. Only emergency purchases may be made from the school Imprest account. No purchases should be made or invoices paid from undeposited cash on hand."). One of the student council sponsors explained that when a teacher requested funds from her for a school activity, she would ask Shaw for approval and his secretary would give her an envelope containing cash to give to the teacher. In addition, the bookkeeper testified that she received an email from a teacher about purchasing food for her horseshoe crab and that the teacher stated Shaw usually gave her a prepaid credit card to buy food for the crab. The bookkeeper testified she did not use cash or prepaid credit cards to pay for purchases because those methods of payment were untraceable. The bookkeeper explained the teacher's email showed items were not being purchased through the proper procedure. Based on the forgoing, we find substantial evidence showed that disbursements were made outside of the concentration and imprest accounts in violation of the District's policies.

Dr. Moss further recommended terminating Shaw because an unauthorized checking account was used for student activity purposes in violation of Section I.E of the Manual. *See* Manual, Section I.E ("Each school will have one checking account not to exceed $500.00, $1,000.00[,] or $1,500.00. This account will be for emergencies only. There shall be no other bank account with the school as the agency or the primary holder. All funds collected in the school are to be deposited in the selected bank by the Beaufort County Schools."). The bookkeeper explained she usually received cash and personal checks for field trips; however, in May 2012, one of the student council sponsors brought her a single check for $1,288 for a drama club and student council field trip to Carowinds. The bookkeeper testified the check read "H.E. McCracken Middle School" and looked like one of the checks she used for the imprest checking account. According to the District's chief

operational services officer, law enforcement determined this unauthorized McCracken bank account was not the imprest account. The bookkeeper stated she showed the check to Shaw and informed him that the student council was collecting money and not bringing it to her for depositing into the school's activity account, that the student council had access to a checking account in the school's name, and that the check looked identical to the school's imprest checks. According to the bookkeeper, Shaw "didn't say much" in response and "just held his head down and pretty much brushed [her] off." Thus, we find substantial evidence showed an unauthorized checking account was used for student activity purposes in violation of the District's policies.

Based on the foregoing, we find substantial evidence supported the Board's determination that Shaw manifested an evident unfitness for teaching based on his willful violation of the District's policies regarding the handling of finances. Because we find substantial evidence supported the Board's decision to terminate Shaw for violating the District's financial policies, we need not address the Board's numerous other grounds for terminating Shaw. *See Barrett*, 348 S.C. at 436, 559 S.E.2d at 370 (stating based on the court's finding that substantial evidence supported the school board's decision to terminate the subject teacher for dishonesty in dealing with the school's ice cream account, the court need not reach the issue of whether substantial evidence showed the teacher was dishonest in her representations on a grant application).

**REVERSED.**

**LOCKEMY, C.J., and WILLIAMS and MCDONALD, JJ., concur.**